# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**QUENTEN RASHARD JOHNSON**                                                       **PLAINTIFF**

**VS.**                                                  **CIVIL ACTION NO. 3:15-cv-881-CWR-FKB**

**CAPTAIN UNKNOWN BURNLY,**
**WARDEN UNKNOWN TAYLER,**
**LT. SCOTTIE MOORE,**
**SERGEANT UNKNOWN MOORE,**
**SERGEANT UNKNOWN BRISTRIL**                                                     **DEFENDANTS**

## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is a motion for summary judgment [45] filed by Lt. Jeffrey Burnley, Lt. Scottie Moore, Sgt. Erica Moore, and Sgt. Johnathan Brister. For the reasons described herein, the undersigned recommends the Court grant the motion.

## I. BACKGROUND

Plaintiff, Quenten Rashard Johnson, is a Mississippi Department of Corrections ("MDOC") inmate currently housed at the Alcorn County Regional Correctional Facility. He is proceeding *pro se* in this litigation and brought this action pursuant to 42 U.S.C. § 1983 against five employees of the Hinds County Sheriff's Office's detention division.[1] The Court held an omnibus or *Spears* hearing in this matter on November 29, 2016, at which Johnson was afforded the opportunity to fully explain his claims.[2] Thereafter, the Court determined that Johnson's claims, as clarified during the hearing, are as follows: (1) Defendants failed to protect him from attacks by other inmates while he was housed at Hinds County's Jackson Detention Center, (2) Defendants failed to protect him from attacks by other inmates while he was housed at Hinds

---

[1] Although named in the complaint as a defendant, Warden Taylor has never been served with process. *See* [24].
[2] *See Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985).

1

County's Raymond Detention Center; (3) Defendants denied him proper medical care after he was attacked at the Raymond Detention Center, and (4) by failing to timely remove medical staples he received after the attack at the Jackson Detention Center; and (5) Defendants violated the Eighth Amendment by detaining him in a facility which contained mold in the showers and exposed electrical wiring in a light fixture in his cell. [39].

Defendants have moved for summary judgment, contending that they are entitled to qualified immunity, and that under the undisputed material facts, Johnson cannot establish the elements necessary to prove his claims. Defendants filed their motion on June 6, 2017, [45], and Johnson filed his response on June 26, 2017 [47].[3]

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the moving party can show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). When considering a summary judgment motion, a court "must review all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002)). "In order to succeed on a § 1983 claim, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each

---

[3] While the Clerk of Court docketed [47] as a motion for summary judgment, the Court finds it to be a response in opposition to [45], not a separate motion for summary judgment.

defendant." *Chandler v. Epps*, No. 3:14-CV-603-CWR-FKB, 2016 WL 1183605, at *2 (S.D. Miss. Mar. 25, 2016).

"[G]overnment officials performing discretionary functions generally ... are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ard v. Rushing*, 911 F. Supp. 2d 425, 427 (S.D. Miss. 2012)(quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)(alterations in original)). "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the official's action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 427-28 (quoting *Wilson*, 526 U.S. at 609). "The doctrine of qualified immunity shields federal and state officials from money damages unless a plaintiff shows '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Id.* at 428 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"To resolve the applicability of a qualified immunity defense, the court employs a two-pronged test." *Ard*, 911 F. Supp. 2d at 428. "The first prong requires the court to consider 'whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation [of constitutional] or federal law.'" *Id.* (quoting *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir.2009)(alterations in original). "If the plaintiff failed to allege a violation of a constitutional right, then the analysis ends." *Id.* (citing *Whittington v. Maxwell*, 455 Fed.Appx. 450, 456 (5th Cir.2011)). "Secondly, if the conduct would amount to a violation of plaintiff's constitutional rights, the court then considers 'whether the defendant's actions were objectively

3

unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (quoting *Washington*, 455 Fed.Appx. at 456).

### III. DISCUSSION

Johnson makes a variety of claims against the moving defendants. The undersigned addresses each of Johnson's claims in turn.

### 1. Johnson's Failure to Protect Claim at the Jackson Detention Center

Johnson's claims stem from his time as a pre-trial detainee in the custody of the Hinds County Sheriff's Office, which operates two detention facilities: the Jackson Detention Center and the Raymond Detention Center. Johnson first arrived at the Raymond Detention Center in January 2015 for classification, where he met with Lt. Moore. [45-1] at 12-13, 20. Johnson testified that he requested Lt. Moore place him in protective custody due to the nature of his charges.[4] According to Johnson, Lt. Moore agreed to place him in "administrative protective custody." *Id.* at 13. Johnson was transferred to the Jackson Detention Center with paperwork from Lt. Moore stating that he was supposed to be placed in administrative protective custody. *Id.* For an unknown reason, however, he was not, and was instead assigned to an ordinary, non-protective-custody zone. *Id.*

According to Johnson, within twenty-four hours of arriving at the Jackson Detention Center, three inmates attacked him. *Id.* at 13-15. He did not know the inmates, had not alerted staff that he believed them to be a threat prior to the attack, and in fact did not believe them to be a threat until the assault actually occurred. *Id.* at 14. After the attack, Johnson was treated at a local hospital, where he received medical staples in his head and back. *Id.* at 15-16. Once he returned from the hospital, he was placed back in the same zone, but in a locked cell. *Id.* at 16-17. Three days after the assault, he was transferred to a protective custody zone. *Id.* at 17.

---

[4] Per Johnson's testimony, he was charged with death of an infant.

4

At the omnibus hearing, Johnson indicated that his "failure to protect" claim was aimed at three defendants: Lt. Moore, Lt. Burnley, and Sgt. Brister. Johnson testified that he believes Lt. Burnley "had a lot do with" his being housed in Zone 308, a non-protective-custody zone at the Jackson Detention Center, rather than Zone 310, a protective-custody zone. *Id.* at 20-22. When asked by the Court what personal knowledge Johnson had to support his claim that Lt. Burnley is the person who decided to place him in Zone 308, Johnson provided none. *Id.* at 22. Instead, Johnson testified that Lt. Burnley was actually stationed in Raymond, not Jackson. *Id.* He testified that Lt. Burnley and Lt. Moore ordered his transfer to Jackson because Raymond did not have an administrative protective custody zone, while Jackson did. *Id.* He further testified that Lt. Burnley provided a written order that Johnson be placed in administrative protective custody upon arrival at the Jackson Detention Center. *Id.* at 22-23. Johnson clarified that his claim against Lt. Burnley was not that Burnley ordered him to be placed in the wrong zone, but that Lt. Burnley knew Johnson was supposed to be placed in protective custody, but did not ensure that he was actually placed there. *Id.* at 22-23. He admitted, however, that Lt. Burnley was not stationed at the Jackson Detention Center and that he was not the person who assigned him to the incorrect zone. *Id.*

With regard to Lt. Moore, Johnson asserts that Lt. Moore failed to protect him at some point after Lt. Moore was transferred to Jackson from Raymond, but after the attack in the Jackson Detention Center. *Id* at 24-26. Johnson alleges that he wrote to Lt. Moore several times after the initial attack, requesting to be placed in protective custody, but that Lt. Moore "never responded back to any of [his] grievances." *Id.* at 25. Johnson admits that he was placed in protective custody in Jackson three days after the initial attack. *Id.* at 17. Johnson does not allege that any other inmates actually harmed him as a result of Lt. Moore's alleged failure to respond to his grievances. *Id.* at 24-26.

5

Johnson alleges a "failure to protect" claim against Sgt. Jonathan Brister relating to his time at the Jackson Detention Center. During the month after the assault in Jackson, Johnson alleges that Brister, "always just put [him] in harm's way." *Id.* at 28. Johnson alleges that on some occasions when he would "go to medical or go to court or something," Sgt. Brister would allow the inmates who assaulted him to "like push on [him] or hit [him] or something." *Id.* at 28-29. Johnson does not allege any physical injury as a result of these interactions he claims Sgt. Brister permitted.

To establish a "failure to protect" claim under Section 1983, a plaintiff must show "that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). "Jail 'officials have a [constitutional] duty . . . to protect inmates from violence at the hands of other prisoners." *Leone v. Goodwin*, No. CV 16-1178, 2017 WL 6503649, at *6 (W.D. La. Dec. 18, 2017)(quoting *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995)(citing *Johnston v. Lucas*, 786 F.2d 1254, 1258 (5th Cir. 1986)(alterations in original). "Prison officials are not, however, expected to prevent all inmate-on-inmate violence." *Id.* (citing *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003)). "Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm." *Id.*

"To establish a § 1983 failure to protect claim plaintiff must show that he was detained or incarcerated . . . 'under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Leone*, No. CV 16-1178, 2017 WL 6503649, at *6 (citing *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). "This is a subjective standard." *Id.* "'[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious

6

harm and disregards that risk by failing to take reasonable measures to abate it.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). "In other words, the prison official must have a sufficiently culpable state of mind, which, in prison-conditions cases, is one of 'deliberate indifference' to inmate health or safety." *Id.* (citing *Farmer*, 511 U.S. at 834.). "To find that an official is deliberately indifferent, it must be proven that 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002), quoting *Farmer*, 511 U.S. at 837). "'Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.'" *Id.* (quoting *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997), citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A plaintiff must also demonstrate actual physical harm resulting from the alleged improper conduct by prison officials. *See Walzier v. McMullen,* 333 F. App'x 848, 851 (5th Cir. 2009)("Absent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim.").

For Johnson to prove a "failure to protect" claim against either Lt. Burnley or Lt. Moore, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, that Lt. Burnley and Lt. Moore were deliberately indifferent to his need for protection, and that he was actually injured by other inmates. Per Johnson's own testimony, he cannot demonstrate that either Lt. Burnley or Lt. Moore were deliberately indifferent to his need for protection at the Jackson Detention Center. Johnson testified that Lt. Burnley and Lt. Moore were responsive to Johnson's request to be placed in administrative protective custody. They ordered his transfer from Raymond to Jackson specifically to ensure his protection, and they provided written orders for the personnel in Jackson that Johnson be placed in protective custody upon arrival.

7

While Johnson was apparently placed in a general population zone rather than one that provided protective custody upon arrival in Jackson, Johnson himself admitted that it was not Lt. Burnley who made that decision. When asked the basis for his suit against Lt. Moore, Johnson provided no information which would indicate that Lt. Moore had anything to do with that decision either. With regard to Lt. Burnley, Johnson stated the basis of his claim for "failure to protect" was that Lt. Burnley, stationed in Raymond, knew that Johnson was supposed to be placed in protective custody in Jackson. Even if Johnson were to prove each of his allegations against Lt. Burnley and Lt. Moore, he cannot show that either acted with deliberate indifference toward his safety.

Additionally, Johnson claims that Lt. Moore failed to protect him by not responding to grievances after Johnson's assault in the Jackson Detention Center. However, Johnson admits that he only wrote to Lt. Moore after the assault, and he fails to allege that he suffered any physical harm at the hands of another inmate as a result of Lt. Moore's alleged failure to respond to his grievances. Accordingly, Johnson cannot establish a failure to protect claim against Lt. Moore with regard to these unanswered grievances.

Johnson's claim against Sgt. Brister also fails. According to Johnson's own testimony, he was not assaulted again at the Jackson Detention Center after the initial assault there. [45-1] at 17-18. And Johnson alleges no physical injury from any incidents with other inmates for which he seeks to hold Sgt. Brister responsible. Johnson has simply failed to state a cognizable § 1983 claim against Sgt. Brister.

### 2. Johnson's Failure to Protect Claim at the Raymond Detention Center

Johnson spent ten months in the Jackson Detention Center before being transferred to the Raymond Detention Center. [45-1] at 18. In his complaint, Johnson claims that prior to being transferred to Raymond, he told Lt. Moore that "he couldn't come to Raymond because [he]

fear[ed] for [his] life." [1] at 5. He claims that Lt. Moore told him that, "he didn't give a f**k about [Johnson's] life." *Id.* Johnson claims that Lt. Moore moved him to Pod C-2 in Raymond around "some gangsters." *Id.* Shortly after he was transferred to Raymond, Johnson claims that a group of inmates entered his cell, assaulted him, and stabbed him. [45-1] at 19-20. He claims that Sgt. Moore witnessed the attack, and did not act properly to protect him. *Id.* at 26-27. He testified that shortly after the assault, prison officials examined him and told him that there was nothing wrong with him. *Id.* at 19. He testified that he saw a nurse that evening, who also did not give him any medical care. *Id.* He believes this assault occurred in either October or November 2015. *Id.* at 20

Following the assault, Johnson alleges that he made Sgt. Moore and Lt. Burnley aware that he "feared for his life" in A, B, and C Pods at the Raymond Detention Center, but was told that "they can't do anything about it." [1] at 6. He claims that he was placed back in C-Pod despite "red-tagging" it, and despite having informed Warden Taylor, Lt. Burnley, and Sgt. Moore that he felt unsafe there. *Id.* He testified that he specifically wrote to Lt. Burnley asking to be moved "out of harm's way." [45-1] at 23-24. He alleges that after he was placed back in C-Pod, he was stabbed again. [1] at 6.

Sgt. Moore, in a sworn affidavit, states that she did not witness any assault of Johnson by other inmates during his time incarcerated at the Raymond Detention Center. [45-3] at 1. She also states that she has no knowledge of Johnson having ever been assaulted by other inmates while at the Raymond Detention Center. *Id.* She claims that while Johnson was at the Raymond Detention Center, he was assigned to protective custody. *Id.* She acknowledges, however, that the facility's policy requires officers to ensure the safety of inmates, and that if she had witnessed the assault and not taken action, that would have been a violation of the policy. *Id.* She stated that in the event

an officer sees an assault take place, policy requires them to intervene immediately by calling for backup and entering the cell when able to do so safely. *Id.* at 2.

Defendants also submit a document which purports to show that Johnson waived his right to remain in protective custody on July 6, 2015, while he was still at the Jackson Detention Center and prior to being transferred to Raymond. [45-2] at 3. The form bears a signature purporting to be that of Johnson. *Id.* Johnson, however, claims that the form is forged. [47] at 1.

Unlike his claims pertaining to the Jackson Detention Center, questions of fact exist with regard to Johnson's claims against Lt. Moore, Lt. Burnley, and Sgt. Moore in relation to the attacks at the Raymond Detention Center. Johnson's testimony raises genuine disputes as to whether they knew that Johnson faced a substantial risk of serious harm, whether they were deliberately indifferent to it, and whether the assaults in Raymond occurred.

Johnson alleges that Lt. Moore transferred him from Jackson to Raymond and failed to place him in a level of custody which would protect him from a known-threat of inmate assaults. Johnson asserts that as a result of Lt. Moore's failure to place him in protective custody upon arrival in Raymond, other inmates assaulted him in October or November 2015. Johnson claims that Lt. Burnley, who allegedly had been involved in sending Johnson to Jackson in order to be in protective custody, failed to put him in protective custody when he was returned to Raymond. Against Sgt. Moore, Johnson claims that she personally witnessed this assault, but failed to take any measures to protect him.

Johnson alleges that after the October or November 2015 assault, he reported his safety concerns to Lt. Burnley and Sgt. Moore. He claims that he was placed in a housing unit that he had specifically told Lt. Burnley and Sgt. Moore was unsafe for him. He alleges that shortly after being placed in that housing unit, he was stabbed again.

Viewing all the facts and evidence in the light most favorable to Johnson, the undersigned cannot find that Lt. Moore, Lt. Burnley, or Sgt. Moore are entitled to summary judgment with regard to Johnson's claims relating to the alleged assaults at the Raymond Detention Center. As genuine disputes of material facts exist, their motion for summary judgment must be denied as to those claims.

### 3. Johnson's Claim for Inadequate Medical Care

Johnson alleges that the medical staff at the Jackson Detention Center waited too long to remove medical staples he received after the January 2015 assault. [45-1] at 15-16.[5] He also alleges that he received inadequate medical care after the October or November 2015 assault at the Raymond Detention Center. *Id.* at 19-20.

"In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F. 3d 752, 754 (5th Cir. 2001). A plaintiff is not entitled to the "best" medical treatment. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). Further, "[a] prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs." *Id.* (citations omitted). A "serious medical need," as defined by the Fifth Circuit, is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12.

Individual liability under 42 U.S.C. §1983 "may not be predicated on the doctrine of respondeat superior;" rather, "[o]nly the direct acts or omissions of government officials…will give rise to individual liability under Section 1983." *Coleman v. Houston Indep. Sch. Dist.*, 113

---

[5] Specifically, he alleges that the staples remained for two and a half weeks and that a doctor said they should be removed in one week. *See* [47] at 2.

F.3d 528, 534 (5th Cir. 1997). "[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)

Johnson fails to allege that any of the moving defendants were directly responsible for his medical care, directly denied him medical care, or even knew about his alleged lack of medical care. Accordingly, summary judgment in favor of the moving defendants with regard to Johnson's inadequate medical care claim is appropriate.

### 4. Johnson's Claim that Mold and Exposed Electrical Wiring Violated his Eighth Amendment Rights

Johnson alleges that he was burned by an exposed wire in a light fixture in his cell at the Raymond Detention Center. [45-1] at 33-34. He also alleges that he was exposed to mold at the Raymond and Jackson Detention Centers and "broke out real bad from it." *Id* at 34-35. He testified that the medical staff gave him "some type of cream to get rid of it." *Id.*

As with his medical care claim, Johnson fails to allege that any of the moving defendants had anything to do with either the mold in the showers or the exposed electrical wiring. He fails to allege that they had any authority to remedy the conditions that he believed to be unacceptable, or that they even had knowledge of them. Accordingly, summary judgment in favor of the moving defendants with regard to Johnson's "conditions of confinement" claim is appropriate.

### IV. RECOMMENDATION

For the reasons discussed herein, the undersigned recommends that the motion for summary judgment [45] filed by Lt. Jeffrey Burnley, Lt. Scottie Moore, Sgt. Erica Moore, and Sgt. Johnathan Brister be granted in part and denied in part. Specifically, the undersigned recommends

that summary judgment be granted, dismissing all of Johnson's claims except for his claims against Lt. Burnley, Lt. Moore, and Sgt. Moore in relation to the two alleged assaults at the Raymond Detention Center.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

So recommended, this the 9th of February, 2018.

                                                            /s/ F. Keith Ball
                                            UNITED STATES MAGISTRATE JUDGE